## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUZANNE MALLOUK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded**<br><br>**Case No. ___** |

Plaintiff Suzanne Mallouk, on behalf of herself and all others similarly situated, through counsel, alleges as follows against Defendant Starbucks Corporation:

### INTRODUCTION

1.      On January 11, 2021, the City of New York enacted a new law that (a) requires retailers and other commercial establishments that collect, retain, convert, store, or share customers' "biometric identifier information" to notify their customers of these practices before customers enter those establishments; and (b) makes it unlawful to sell, lease, trade, or share biometric identifier information for anything or value or otherwise profit from the transaction of such information. *See* N.Y.C. Admin. Code § 22-1201 *et seq.* ("The Biometric Identifier Information Law"). The type of biometric information the law applies to includes any physiological or biological characteristic that is used to identify (or assist in identifying) a person, such as facial recognition, retina scans, fingerprints, handprints, or any other identifying characteristic like the shape or size of a person's body.

2.      The law's notice provision creates a simple mandate for commercial establishments that collect customers' biometric identifier information: they must "plac[e] a clear

and conspicuous sign near all of the commercial establishment's customer entrances notifying customers in plain, simple language, in a form and manner prescribed by the commissioner of consumer and worker protection by rule, that customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable." N.Y.C. Admin. Code § 22-1202(a).

3.      By adopting this basic mandate, the City of New York has made it clear that consumers have a right to know when commercial establishments are collecting, retaining, converting, storing, or sharing their biometric identifier information, so that consumers can decide for themselves whether they want to shop at such establishments or further investigate those establishments' practices before allowing their biometric identifier information to be collected or shared.

4.      Starbucks, however, has failed to abide by this mandate. In November 2021, Starbucks opened its first Starbucks–Amazon Go store at 111 E. 59th Street, New York, NY; and in July 2022, opened its second Starbucks–Amazon Go store at 620 8th Avenue, New York, NY. At each location, Starbucks has collected, converted, retained, stored, and shared the biometric identifier information of all customers who enter its marketplace or lounge seating areas.

5.      Unlike a traditional Starbucks store—where cashiers first physically handle, scan, and charge customers for the goods they have selected (*e.g.*, Starbucks sous vide egg bites, breakfast sandwiches, and protein boxes)—a Starbucks–Amazon Go store customer typically selects such food items from a shelf, leaves the store with the goods they've selected, and is automatically charged for such goods without waiting in line, scanning, or interacting with a Starbucks cashier. To make this "Just Walk Out" technology possible, Starbucks constantly collects and uses the biometric identifier information of each customer who enters the gated area

of the store, including by scanning the palms of some customers to identify them and by applying computer vision, deep learning algorithms, and sensor fusion that measure the shape and size of each customer's body to identify customers, track where they move within the gated area, and determine what they have purchased.

6.    Starbucks, however, has not complied with the simple disclosure requirement of the Biometric Identifier Information Law. From January 15, 2022, when the law's implementing rule went into effect, through March 13, 2023, Starbucks failed to post *any* signs at the entrances of any Starbucks–Amazon Go stores in New York City that would notify customers that those stores collect, retain, convert, store, and share consumers' biometric identifier information.

7.    On November 29, 2022, Plaintiff Suzanne Mallouk visited the Starbucks–Amazon Go store at 111 E. 59th Street. She purchased two items and did not see a sign providing notice that the store was collecting, retaining, converting, storing, or sharing customers' biometric identifier information.

8.    On or around March 14, 2023, several days after the *New York Times* published a story on Amazon's failure to post a sign about its collection of biometric identifier information in its Amazon Go stores in New York City,[1] Starbucks first posted a sign outside its Starbucks–Amazon Go stores, though that sign does not comply with New York City law.

9.    On March 21, 2023, Plaintiff Mallouk notified Starbucks in writing about her November 2022 visit, Starbucks's obligation to post a sign notifying customers about Starbucks' collection of such information, and Starbucks' failure to comply with that obligation.

---

[1] *See* Kashmir Hill, *Which Stores Are Scanning Your Face? No One Knows*, N.Y. Times (Mar. 10, 2023), https://www.nytimes.com/2023/03/10/technology/facial-recognition-stores.html (stating that a reporter visited an Amazon Go store in Manhattan that "was awash in cameras, sensors and palm scanners" but did not have a sign disclosing that the store collects customers' biometric identifier information).

10.     Starbucks did not respond to Ms. Mallouk's letter, much less cure the identified violation.

11.     Starbucks' new signage woefully fails to comply with the disclosure mandate of the Biometric Identifier Information Law. The new sign fails to adequately disclose that Starbucks collects, retains, converts, stores and/or shares biometric identifier information. Even worse, the sign informs customers that Starbucks will ***not*** collect their biometric identifier information unless they use the Amazon One palm scanner to enter the Starbucks–Amazon Go store, even though such stores ***do*** collect biometric identifier information on ***every customer who enters the gated area of the store***, including information on the size and shape of every customer's body. Nor is the sign clear and conspicuous, as the sign's color, style, and font are designed to avoid attracting customers' attention.

12.     By posting these signs, Starbucks is now making false assurances that it will not collect any biometric identifier information about customers unless a customer uses a palm scanner to enter the gated area of the store.

13.     Starbucks is also violating a separate provision of the Biometric Identifier Information Law, which provides that "It shall be unlawful to sell, lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information." N.Y.C. Admin. Code § 22-1202(b).

14.     Under an agreement with Amazon, for each customer entering Starbucks' gated marketplace / lounge area (which provides a cashier-less experience), Starbucks uses Amazon's "Just Walk Out" technology to collect and then share each customer's biometric identifier information with Amazon, who can then use such information for its own purposes. In exchange, Starbucks receives a range of benefits, including: (a) the ability to use Amazon's "Just Walk

Out" technology at marginal or discounted rate; (b) Amazon's insights and "Just Walk Out Analytics," which are each aimed at increasing Starbucks' revenues for its Starbucks–Amazon Go stores; (c) the ability to operate these Starbucks stores with fewer employees, allowing Starbucks to save and retain money that would otherwise be spent on employee salaries, benefits, training, and management of such employees; and (4) an increase in customers and sales. Through this arrangement with Amazon, Starbucks sells, trades, and shares customers' biometric identifier information with Amazon in exchange for various things of value, and otherwise profits from the transaction of biometric identifier information.

15.    In this action, Plaintiff Suzanne Mallouk seeks a declaration that Starbucks has violated the Biometric Identifier Information Law, N.Y.C. Admin. Code § 22-1202(a) and (b), an order requiring Starbucks to comply with the law, and damages for herself and the other Starbucks customers whose rights were violated by Starbucks, among other forms of relief.

## PARTIES

16.    Suzanne Mallouk is a resident of Sullivan County, New York. She maintains an office for her business in Manhattan.

17.    Starbucks Corporation is a publicly traded company headquartered in Seattle, Washington and incorporated in Washington. Starbucks is the world's largest coffeehouse chain and serves its consumers through more than 35,000 stores globally, including nearly 16,000 stores in the United States, nearly 700 stores in New York, and nearly 200 stores in New York City.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2), because this is a class action where the amount in controversy exceeds $5 million, exclusive of interest

and costs, and the Plaintiff and most of the Class Members are citizens of the State of New York, while the Defendant is a citizen of Washington State.

19.     There is specific personal jurisdiction over Starbucks in this District, because each violation at issue in this action occurred in this District, where Starbucks currently operates two Starbucks–Amazon Go stores that failed to comply with the City of New York's Biometric Identifier Information Law.

20.     Venue is proper in this District under 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## FACTUAL BACKGROUND

**A.      The City of New York Enacts the Biometric Identifier Information Law**

21.     In 2021, New York City enacted Local Law 3 ("the Biometric Identifier Information Law"), which amended the New York City Administrative Code. This new law requires businesses to notify customers of their use of biometric identifier technology and prohibits the sharing of biometric identifier information in exchange for anything of value. The Biometric Identifier Information Law is codified in Chapter 12 of Title 22 of the New York City Administrative Code. *See* N.Y.C. Admin. Code §§ 22-1201 – 1205.

22.     The Biometric Identifier Information Law requires commercial establishments, including retail stores selling goods to consumers, that collect, retain, convert, store, or share biometric identifier information about consumers, to disclose that they do so by placing a clear and conspicuous sign at each customer entrance. N.Y.C. Admin. Code § 22-1202(a).

23.     The Biometric Identifier Information Law defines the term "biometric identifier information" as "a physiological or biological characteristic that is used by or on behalf of a commercial establishment, singly or in combination, to identify, or assist in identifying, an individual, including, but not limited to: (i) a retina or iris scan, (ii) a fingerprint or voiceprint,

6

(iii) a scan of hand or face geometry, or any other identifying characteristic." N.Y.C. Admin. Code § 22-1201. The specific examples of "biometric identifier information" identified in Section 22-1201 are illustrative and not exhaustive.

24.     As the New York City Council's Committee on Consumer Affairs and Business Licensing stated in its December 10, 2020 Committee Report (at p. 3) on the Biometric Identifier Information Law, "physiological characteristics concern the shape or composition of the body." In other words, information on the size or shape of a customer's body is an "identifying characteristic" that qualifies as "biological identifier information" under N.Y.C. Admin. Code § 22-1201.

25.     The Biometric Identifier Information Law states that establishments can comply with the disclosure requirements of N.Y.C. Admin. Code § 22-1202(a) by posting at every entrance the sign prescribed by the Commissioner of Consumer and Worker Protection. N.Y.C. Admin. Code § 22-1202.

26.     In 2021, the Commissioner of Consumer and Worker Protection adopted a rule to implement the Biometric Identifier Information Law. That rule, which is located in Chapter 8 of Title 6 of the Rules of the City of New York, provides the following:

> To comply with section 22-1202 of Chapter 12 of Title 22 of the New York City Administrative Code, a commercial establishment covered by such section must post a sign in a clear and conspicuous manner at every entrance used by customers in a size of at least 8.5 inches by 11 inches that discloses if customers' biometric identifier information is being collected, retained, converted, stored, or shared. The requirements of this section may be fulfilled by posting a color copy of the Biometric Identifier Information Disclosure, as made publicly available on the Department's website, in a clear and conspicuous manner at every entrance used by customers in a size of at least 8.5 inches by 11 inches.

27.     The following image is the Biometric Identifier Information Disclosure sign that

the Department of Consumer and Worker Protection has made publicly available on its website

so that commercial establishments like Starbucks can post a color copy of this sign and comply

with the Biometric Identifier Information Law's disclosure mandate.



28.     The Biometric Identifier Information Law also provides that "It shall be unlawful

to sell, lease, trade, share in exchange for anything of value or otherwise profit from the

transaction of biometric identifier information." N.Y.C. Admin. Code § 22-1202(b). This

provision applies to anyone, including commercial establishments like Starbucks, and is an

outright prohibition on the conduct described in § 22-1202(b). Accordingly, even when a store

posts a sign that complies with N.Y.C. Admin. Code § 22-1202(a) and discloses that the store

shares biometric identifier information, the store is still liable under N.Y.C. Admin. Code § 22-

1202(b) if the store sells, leases, trades, or shares biometric identifier information in exchange

for anything of value or if the store otherwise profits from the transaction of such information.

**B.      Starbuck's use of Just Walk Out technology to operate its Starbucks–Amazon Go Locations.**

29.      In November 2021, Starbucks opened its first Starbucks–Amazon Go store at 111

E. 59th Street in Manhattan. This store was intended to provide an enhanced Starbucks consumer

experience by using Amazon's "Just Walk Out" technology to provide a more efficient check-

out process for its customers. In July 2022, Starbucks opened its second New York City

Starbucks–Amazon Go store at 620 8th Avenue in Manhattan.

30.      Both stores share a similar layout. Each store contains a coffee bar and a gated

area that includes a cashier-less marketplace and a lounge seating area. Marketplace items

include the full Starbuck menu and additional food and beverage items that ordinarily would not

be available in a traditional Starbucks store.

31.      The inside of the Starbucks–Amazon Go store at 59th Street, where customers can

pick up Starbucks coffee and can enter a gated area to visit the lounge and marketplace, looks

like the following image:



32.    The gated areas of the Starbucks–Amazon Go stores use and rely on "Just Walk Out" technology supplied by Amazon to allow Starbucks customers to walk in, select items, and exit without needing to check-out at a Starbucks register. Upon exiting, the Starbucks customers are then charged for any item that they (or the people in their group) removed.

### 1.    Three Payment Methods: Linking Biometric Data with Payment

33.    To enter the gated area, a Starbucks customer must use one of three forms of payment, —*i.e.*, a credit card, a QR code generated by the Amazon mobile app on the customer's phone, or a registered scan of the customer's palm using "Amazon One technology." *See* Amazon, Shopping at an Amazon Go Store, https://perma.cc/MH2P-2PCA.

34.    For Starbucks' customers entering the gated area by using a palm scan (*i.e.*, via Amazon One technology), Amazon's proprietary imaging and computer vision algorithms capture and encrypt the customer's palm image. After that the person's palm serves as a unique palm signature that can be read by the palm scanners at the Starbucks–Amazon Go stores to identify that customer, as well as by palm scanners at any other store Amazon operates (such as



Amazon Go stores, Amazon Campus Cafes, Amazon Fresh grocery stores, Amazon Style clothing stores, and Whole Foods) or stores operated by third parties that have an Amazon One hardware device. Amazon's website explains how Amazon One works in greater detail. *See* Amazon, How it works: Meet Amazon One, https://perma.cc/AL8T-JFYD.

35.    When a Starbucks customer scans their palm to sign up for Amazon One, their palm image is (a) collected by the Amazon One hardware device, (b) used to confirm the customer's identity, (c) converted into a unique palm signature, and then (d) shared with and transmitted to Amazon's servers that are located outside of the Starbucks store, so that the customer's palm signature can be identified and processed at any stores that have an Amazon One hardware device.

36.     Notably, the use of any payment method (*i.e.*, credit card, QR code, or a customer's palm scan) allows Starbucks and Amazon to know the identity of the person who has scanned their credit card, QR code, or palm when entering the gated area, when that person enters and leaves the gated area, what that person selects, their prior purchase history, and who to charge for any selected products.

### 2.     Just Walk Out Technology

37.     Once a customer is inside the gated area, Starbucks then uses Amazon's Just Walk Out technology to track that customer, their movements, their interactions with each product, and the products they select.

38.     Essentially, Starbucks uses a grid of cameras placed around the store to track each customer's movements until they leave. Through this "Person Detection" process, Starbucks collects, uses, retains, converts, and stores information on the size and shape of each customer's body. After information on size and shape of each customer's body is collected within the Starbucks store, Starbucks then shares and transmits such information to Amazon's servers located outside of the Starbucks store so that Amazon can use that information for various purposes, including purposes unrelated to the Starbucks–Amazon Go stores.

39.     As explained by Amazon's website, "Just Walk Out technology uses a combination of sophisticated tools and technologies to determine who took what from the store. When a consumer takes something off the shelf, it's added to their virtual cart. When the consumer puts the item back on the shelf, it comes out of their virtual cart. After they leave the store, they're charged for the items they left the store with." Amazon, Just Walk Out technology by Amazon FAQs, https://perma.cc/X5EB-FFY6.

40.     More specifically, Just Walk Out technology relies on computer vision, a field of artificial intelligence that allows computers to interpret and understand visual information.

Common applications of computer vision include object recognition and detection, surveillance and security, and facial recognition.

41.     Just Walk Out Technology also uses deep learning algorithms, a subset of machine learning that allows for complex extraction of input data. The technology also uses "sensor fusion," which is the process of combining data from cameras and other sensors to provide a comprehensive understanding of any given environment.

42.     Together, these components are combined to create the "inventory management system" that is designed to track and analyze customer movements and help retailers like Starbucks better understand customer behavior and create a contact-less shopping experience. To do so, Starbucks identifies, distinguishes, and tracks the movements of each customer who enters the gated area of the Starbucks–Amazon Go store until they leave.

43.     When customers are shopping in a store that use Just Walk Out Technology, the top-level view resembles the following image, where each customer is represented by a unique image and a distinct label. This top-level view allows the inventory management system to track where every customer moves within the store.



44.     Just Walk Out Technology also applies computer vision to conduct a horizontal-level view of each customer, which enables the technology to determine which people are taking what items off shelves or putting items back on shelves. In this horizontal-level view—shown in the two images below—the technology scans the shape and size of each person's body and creates a skeleton-like figure for each person that is unique to their size and shape. The movements of these unique figures are closely tracked by this technology, so that Starbucks can associate each person with the products they touch, and thus determine which person is removing an item from the shelf or returning it.



45.     One of the first indications that Just Walk Out technology uses body measurements to identify customers emerged in a 2015 United States patent application by Amazon. As described by a *Vox* article that links to these patent applications, the Just Walk Out technology would "allow shoppers to pick items and leave without stopping at a cashier station or kiosk"; would use cameras to identify "when a person entered the facility, when she removed something from a shelf and when she left with an item in her hand"; and would distinguish

between users through "user-identifying information (e.g., **images of the user, height of the user, weight of the user**), a user name and password, user biometrics, purchase history, payment instrument information (e.g., credit card, debit card, check card), purchase limits, and the like.'" Jason Del Rey, *We May Have Just Uncovered Amazon's Vision for a New Kind of Retail Store*, Vox (Mar. 30, 2015) (emphasis in article), https://www.vox.com/2015/3/30/11560904/we-may-have-just-uncovered-amazons-vision-for-a-new-kind-of-retail.

46.     Later patents obtained by Amazon appear to confirm that the Just Walk Out technology uses various techniques "to identify a user. For example, image capture and facial cognition may be used." US Patent No. US 11,301,783 B1 at 12:7–8 (Apr. 12, 2022).[2]

47.     Likewise, "other unique and/or temporary identifiers (*e.g*., the color of the user's shirt, shoes, hat, pants, **the user's skeletal structure**) may be identified and used to assist in identifying the user as they move around the materials handling facility. For example, if the user is wearing a bright yellow shirt, that shirt may be identified and used as a temporary identifier for the use in identifying the user as they move around the materials handling facility that day. As another example, **images representative of user skeletal structure may be captured**." *Id*. at 12:24–33 (emphasis added).

48.     Similarly, "other user characteristics and/or features may be considered when disambiguating between multiple potential users to determine which one performed an item action. For example **images of the user performing the item action may be processed to determine the hand used to perform the action item, the posture**, **size and/or shape of the user**, the movement and/or gate [sic] of the user as they approached the item, the orientation of the

---

[2] U.S. Patent No. US 11,301,783 B1 (Apr. 12, 2022), https://patentimages.storage.googleapis.com/92/c8/62/2423c75bf3ab3b/US11301783.pdf.

user relative to the item, ***the skeletal structure of the user*** that performed the item action and/or

other temporary or permanent characteristics of the user, etc. Such information may be compared

with information associated with the user as a factor in determining the probability that the user

performed the item action." *Id*. at 13:41–54 (emphasis added).



49.    In another patent, Amazon suggests that its technology may furthermore

distinguish customers by "height", "size", "width", "a facial feature", "length of a body part",

"posture", "pose", "gait", or "speed of movement". U.S. Patent No. US 11,462,005 B1 at 5:57–

67 (Oct. 4, 2022).[3]

50.    Beyond identifying people and their movements, the Just Walk Out technology

can also recognize thousands of products in the real world—which is how the store operating

Just Walk Out technology knows that a particular person has removed (or returned) a specific

product from a shelf. Through this "Object Recognition" process, the Just Walk Out technology

---

[3] https://patentimages.storage.googleapis.com/b9/ee/61/6b08fe7d94b361/US11462005.pdf.
Other patents suggest that "facial recognition" and other "user provided information" including
the "skin tone" of a customer's hand are also used to determine when a customer has selected a
product. *See* U.S. Patent No. US 10,268,983 B2 at 5:5–6, 6:48–49 (Apr. 23, 2019); U.S. Patent
No. US 11,100,463 B2 (Aug. 24, 2021).

can identify the same yellow package of Bombay Potatoes (shown to the left) or the same green package of Pirate's Booty, whether the package is standing straight up, crinkled in a ball, or shown in different lighting.



### 3. Starbucks's agreement to collect and then share the biometric identifier information of each Starbucks–Amazon Go customer.

51.    Starbucks operates its Starbucks–Amazon Go stores pursuant to an agreement with Amazon: Starbucks collects customers' biometric identifier information on Starbucks' premises using Amazon's Just Walk Out Technology and then shares that information with Amazon so that Amazon can use the information for its own purposes.

52.    Under this agreement, Amazon installs the Just Walk Out technology into the Starbucks store, including the gates where Starbucks' customers scan their palms, credit cards, or in-store codes to enter; the dozens of cameras used to measure the shape and size of customers and track them within the store; and the computer equipment that transmits data from the Starbucks store to Amazon's servers outside of Starbucks' premises.

53.    Once this Just Walk Technology is installed, Starbucks and its employees manage the entire store, including by directing and instructing customers on how to scan their palms or otherwise enter the gated area, answering customers' questions, stocking the shelves with food

and items sourced from Starbucks and other suppliers (including local kitchens and bakeries), preparing hot foods that are served, and cleaning the entire store. In addition, the furniture and aesthetic of the Starbucks–Amazon Go store provide customers with the experience of a traditional Starbucks store, except that they have the ability to purchase items without having to check out at a register. *See* Starbucks Pickup and Amazon Go Collaborate to Launch New Store Concept in New York City (Nov. 18, 2021), https://stories.starbucks.com/press/2021/starbucks-pickup-and-amazon-go-collaborate-to-launch-new-store-concept-in-new-york-city/.

54.    Once the Starbucks–Amazon Go stores were fully launched, Amazon's primary role in these stores has been limited to checking to make sure that the Just Walk Out technology is working properly. In that regard, Amazon's role in the Starbucks–Amazon Go stores is the same as the role an information technology ("IT") contractor plays in setting up and managing video surveillance for a commercial establishment.

55.    However, unlike a traditional IT contractor, Amazon is free to use such Starbucks-collected customer information for Amazon's own commercial purposes that are unrelated to the operations of the Starbucks stores.

56.    After Starbucks collects each customer's biometric identifier information—including measurements of the size and shape of each customer's body and customers' palm images—on Starbuck's premises, Starbucks then shares and transmits that information to Amazon's servers located outside of the Starbucks store. Amazon takes that Starbucks customer information and uses it to transact business in stores wholly owned and operated by Amazon or other third parties.

### 4. Starbucks benefits and profits from Amazon Go's Just Walk Out Technology and each customer's biometric identifier information.

57.     Under this agreement, Starbucks benefits and profits from its collection, conversion, retention, storage, sharing, selling, and/or trading of its customers' biometric identifier information with Amazon.

58.     First, Starbucks shares, sells, and trades its customers' biometric information with and to Amazon in exchange for the ability to use Amazon's "Just Walk Out" technology for a marginal or discounted rate. In other words, because Starbucks is allowing Amazon to receive and use Starbucks customers' biometric identifier information for Amazon's own commercial purposes, Starbucks receives a cost savings from the usual cost of Amazon's "Just Walk Out" technology.

59.     Second, Starbucks' shares, sells, and trades its customers' biometric information with and to Amazon in exchange for the use and receipt of Amazon's "Just Walk Out Analytics"—i.e., Amazon's insights showing how products within the Starbucks' stores are being considered, picked up, returned to shelf, and/or purchased by its customers who enter Starbucks' marketplace and lounge seating areas.[4]  These Just Walk Out Analytics that Amazon provides to Starbucks are created with and rely on the biometric identifier information of customers that Starbucks collects at the Starbucks–Amazon Go stores and provides, shares, sells, and trades with and to Amazon. As a result, Starbucks can forego relying on expensive customer surveys that only provide data from a snapshot in time, and instead use the Just Walk Out

---

[4] *See* Jon Jenkins, Uncover store opportunities, drive efficiencies, and improve the consumer experience with Amazon's Just Walk Out Analytics, aws.amazon.com (Jan. 4, 2023), https://perma.cc/NYX3-GTRK; In the news: Leveling up convenience in the c-store, https://perma.cc/MS2L-HMFJ; Learn how the Just Walk Out technology experience works, Just Walk Out technology by Amazon (Apr. 2023), https://www.youtube.com/watch?v=j9iNEHn4NmE.

Analytics to drive Starbucks' decision-making into product displays, whether particular items should be added or removed, and whether promotions of certain products drive additional sales. Each of these insights helps to drive more sales, revenues, and profits for Starbucks.

60.    Third, Starbucks' sharing, selling, and trading of its customers' biometric information allows Starbucks to employ fewer workers at its Starbucks–Amazon Go locations than it otherwise would employ. As a result, Starbucks saves significant labor costs through this arrangement.

61.    Finally, Starbucks' sharing, selling, and trading of its customers' biometric information allows Starbucks to distinguish itself from other coffee and convenience stores, thereby giving it a competitive edge in attracting new customers to its Starbucks–Amazon Go stores, based on both their convenience and novelty. For example, upon its November 2021 opening, the first location made national and local headlines and was the subject of video tours on YouTube promoting the store.

### C.    Despite constantly collecting, converting, retaining, storing, and sharing customers' biometric identifier information, Starbucks failed to disclose those practices.

62.    The information about customers who enter the gated areas of Starbucks–Amazon Go stores that Starbucks collects, retains, converts, and stores to identify those customers—namely information about the size and shape of each customer's body and the palm images of some customers—and shares with Amazon constitutes "biometric identifier information" within the meaning of the Biometric Identifier Information Law.

63.    A "scan of the hand" is considered "biometric identifier information" under N.Y.C. Admin. Code § 22-1201, which defines the term "biometric identifier information" to include "a scan of hand or face geometry".

64.     Information on the size and shape of each customer's body is an "other identifying characteristic" that qualifies as "biometric identifier information" within the meaning of N.Y.C. Admin. Code § 22-1201.

65.     As the New York City Council's Committee on Consumer Affairs and Business Licensing stated in its December 10, 2020 Committee Report (at p. 3) on the Biometric Identifier Information Law, "physiological characteristics concern the shape or composition of the body." In other words, information on the size or shape of a customer's body is an "identifying characteristic" that qualifies as "biological identifier information" under N.Y.C. Admin. Code § 22-1201.

66.     Furthermore, in the late 1800s measurements of the size and shape of people's bodies was first type of biometric information that law enforcement agencies used to uniquely identify individuals, even before fingerprints were widely used to identify people. Under the so-called Bertillon System, which was used by New York City and State officials, law enforcement would take precise measurements of criminals' body parts, as well as their standing height, sitting height, and the distance between their fingertips and outstretched arms.[5]

67.     Because Starbucks collects, retains, converts, and stores such biometric identifier information about its Starbucks–Amazon Go store customers and shares the same information with Amazon, Starbucks has an obligation under the N.Y.C. Admin. Code § 22-1202(a) to "plac[e] a clear and conspicuous sign near all of the commercial establishment's customer entrances notifying customers in plain, simple language, in a form and manner prescribed by the

---

[5] *See* New York State, Division of Criminal Justice Services, The Bertillon System, https://perma.cc/U3DU-65KF; Selia Cheng, These 100-year-old photos reveal the birth of the modern mugshot, QZ (Sept. 24, 2016), https://perma.cc/WZ5F-F5WP; Cleveland Police Museum, Criminal Identification: The Bertillon System, https://perma.cc/6DH2-DZ36.

commissioner of consumer and worker protection by rule, that customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable."

68.    Despite the fact that each Starbucks–Amazon Go store in New York City has collected, retained, converted, stored, and shared biometric identifier information of each customer who entered its gated areas since 2021 and shared such information with Amazon, prior to March 14, 2023 Starbucks did not display any signs at the entrances of its Starbucks–Amazon Go stores to notify customers that the stores collect, retain, convert, store, or share customers' biometric identifier information, including but not limited to the standard 8.5 x 11-inch sign authorized by New York City's Department of Consumer and Worker Protection.

**D.    Ms. Mallouk's visit to a Starbucks–Amazon Go Store that lacked signage about Starbucks' collection, retention, conversion, storage, and sharing of consumers' biometric identifier information.**

69.    On November 29, 2022, Ms. Mallouk visited the Starbucks–Amazon Go Store at 111 E. 59th Street, New York, NY, 10022. This store has the same Just Walk Out technology as the other Starbucks–Amazon Go store located at 620 8th Avenue, New York, NY, including the same types of computer vision, deep learning algorithms, and sensor fusion and the same Amazon One hardware devices that scan customers' palms.

70.    When Ms. Mallouk entered the 111 59th Street Starbucks–Amazon Go store, she did not see any sign at any entrance that notified customers that customers' biometric identifier information is being collected, retained, converted, stored, or shared. In particular, she did not see the 8.5 x 11-inch sign that the Department of Consumer and Worker Protection has made available to commercial establishments like Starbucks to comply with § 22-1202(a). *See* https://perma.cc/QX57-G48H.

71.    To enter the Starbucks's marketplace and lounge seating area, Ms. Mallouk used her credit card associated with her Amazon prime account. She opted to enter the store this way,

instead of scanning her palm with the Amazon One technology, because she did not want to provide Starbucks with such personal information about herself or her body.

72.     Starbucks then used computer vision technology to identify Ms. Mallouk through the shape and size of her body and track every single movement that Ms. Mallouk made in the store to identify where she went, what items she removed from the shelves, and what items she put back on the shelves.

73.     During her visit, Ms. Mallouk selected two items—two Buffalo-Style Chicken Wraps—and walked out of the store. After she left the store, Ms. Mallouk received a receipt for $15.24 from Amazon for purchasing those two items.

74.     If Ms. Mallouk had seen the standard 8.5 x 11-inch DCWP-authorized sign at the entrance of the 111 E. 59th Street Starbucks–Amazon Go store informing her that the store "collects, retains, converts, stores, or shares customers' biometric identifier information" (or a similar custom sign that complies with the Biometric Identifier Information Law), she would not have entered the gated area of the Starbucks store or made the purchase. Other than when she visited the 111 E. 59th Street Amazon Go store on November 29, 2022, Ms. Mallouk has never entered the gated area of a Starbucks–Amazon Go store.

75.     Ms. Mallouk values her privacy and is concerned that companies track collect, retain, convert, store, and share too much information that is linked to her and other people. Ms. Mallouk believes that consumers should be fully informed about what data and information about them companies collect, retain, convert, store, share, and sell *before* those companies collect that data and information, so that consumers can understand and knowingly consent to the collection of that data and information.

76.     On March 21, 2023, Ms. Mallouk mailed a letter to Starbucks to notify the

company that she had visited its 111 E. 59th Street store location, that the store "has collected, retained, converted, and stored biometric identifier information about me and other customers who entered the store, including by using computer vision to collect information on the size and shape of each customer's body and palm scans for customers who choose to enter the store by scanning their palms," that Starbucks has an obligation to post a sign notifying customers about collecting such information, and that Starbucks was not complying with that disclosure obligation.

### E. Starbucks fails to take corrective measures or inform Ms. Mallouk in writing that the violation had been cured and that no further violations will occur.

77.     Starbucks did not respond to Ms. Mallouk's March 21, 2023 letter, despite the fact that Ms. Mallouk provided Starbucks her business address in New York City. Nor did Starbucks inform Ms. Mallouk in writing that Starbucks' violation of N.Y.C. Admin. Code § 22-1202(a) had been cured and that no further violations would occur.

78.     From the time that Ms. Mallouk visited the Starbucks–Amazon Go store on November 19, 2022 through March 13, 2023, Starbucks did not post any signs at the 111 E. 59th Street store to disclose Starbucks's collection, retention, conversion, storage, or sharing of biometric identifier information, and Starbucks did not post any signs at the other 620 8th Avenue Starbucks–Amazon Go store location disclosing its collection, retention, conversion, storage, or sharing collection of biometric identifier information.

79.     On March 14, 2023, Starbucks posted the following sign its 111 E. 59th Street Starbucks–Amazon Go store location and its 620 8th Avenue location in New York City.



80.     The sign states as follows: "Biometric information collected at this location. Starbucks Pickup® + Amazon Go. This business uses an Amazon One device that collects and stores customers' biometric identifier information. If you use Amazon One, your biometric information will be used to help identify you. No biometric information will be collected from customers who do not use an Amazon One palm scanner."

81.     The signage that Starbucks posted at its two Starbucks–Amazon Go stores on or after March 14, 2023, falls woefully short of complying with the Biometric Identifier Information Law's disclosure mandate. Starbucks also has not yet taken corrective action in response to Ms. Mallouk's March 21, 2023 notice. *See* N.Y.C. Admin. Code § 22-1202(a).

82.     Starbucks' sign does not comply with N.Y.C. Admin. Code § 22-1202(a) for three reasons.

83.    First, the sign is not "clear and conspicuous," as section 22-1202(a) and its implementing rule require. The style of the sign is designed to avoid attracting attention—the very opposite of clear and conspicuous. The color, style, and font size of the sign do not attract the attention of customers who enter the store. Starbucks' custom sign stands in stark contrast to the standard sign authorized by New York City's Department of Consumer and Worker Protection that has a bright red banner that draws attention by stating "Attention Customers."

84.    Second, the sign does not identify *all* of the actions that Starbucks takes with respect to customers' biometric identifier information that § 22-1202(a) requires to be disclosed on a sign. Section 22-1202(a) and its implementing rule require commercial establishments to post a sign notifying customers that "customers' biometric identifier information is being collected, retained, converted, stored, or shared, *as applicable*." N.Y.C. Admin. Code § 22-1202(a) (emphasis added); *see also* N.Y.C. Rules, Tit. 6, Ch. 8, § 8-01 (stating that the sign must disclose "if customers' biometric identifier information is being collected, retained, converted, stored, or shared."). The model sign provided by the Department of Consumer and Worker Protection references not just the collection of biometric identifier information, but covers the waterfront of all the relevant types of actions the law requires to be disclosed. It states, "This Business collects, retains, converts, stores, or shares' customers' biometric identifier information."  By including the words "as applicable" in the phrase "customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable," Section 22-1202(a) makes clear that the sign must disclose *all* of the relevant types of actions that the commercial establishment takes with respect to customers' biometric identifier information.

85.    But Starbucks' sign only mentions generally that biometric information is "collected" at this location, and when referencing the Amazon One palm scanner it says that the device "*collects and stores* customers' biometric identifier information." (emphasis added). The sign, however, does not state that Starbucks *converts, retains, or shares* customers' biometric identifier information, even though Starbucks *does* convert, retain, and share such information with Amazon, as described above.

86.    Third, other than the sign's references to how the Amazon One palm scanner collects and stores biometric identifier information from customers who use Amazon One, the sign expressly denies and disavows that Starbucks collects customers' biometric identifier information. It unequivocally states: "No biometric information will be collected from customers who do not use an Amazon One palm scanner." In other words, the sign is telling customers that if they do not use the Amazon One palm scanner, their biometric identifier information will *never* be collected. But as described above, the Starbucks–Amazon Go stores *always* collect, convert, store, retain, and share biometric identifier information from *every customer* who enters the gated areas of the stores—including those who don't use the Amazon One palm scanner—by applying computer vision, deep learning algorithms, and sensor fusion that measure the shape and size of each customer's body to identify customers, track where they move in the stores, and determine what they have purchased.

87.    An ordinary, reasonable person who reads Starbucks' sign would thus believe that their biometric identifier information will not be collected by the Starbucks–Amazon Go store so long as they don't use the Amazon One palm scanner to enter, even though Starbucks *always* collects, retains, converts, and stores biometric identifier information for each-and-every customer who enters the gated area, and shares that information with Amazon.

88.      Customers who read the sign and enter the gated area without using the Amazon One palm scanner are placed in a worse position for having read the sign than if they had not seen the sign in the first place—because they have been led to falsely believe that Starbucks will not collect any of their biometric identifier information. And even customers who choose to use the Amazon One palm scanner to enter the gated area would reasonably believe that the Amazon One palm scanner is the only way in which their biometric identifier information is being collected, although that is not true.

**F.      Plaintiff Mallouk and Other Starbucks Customers Have Been Injured.**

89.      Plaintiff Mallouk and other members of the Class have suffered injuries and been harmed by Starbucks' misconduct, including but not limited to (1) making purchases at Starbucks–Amazon Go stores that they otherwise would not have made had Starbucks provided them the required notification, (2) having their biometric identifier information collected, retained, converted, stored and shared without their knowledge, consent, or compensation, (3) losing the ability and power to make informed decisions about the collection, retention, conversion, storage, sharing, and use of their biometric information, (4) having their privacy rights and interests violated, including by creating a risk that their biometric information will be misused or shared by Starbucks, Amazon, and other parties with which Starbucks and Amazon transact business, and (5) having Starbucks profit from the collection, retention, conversion, storage, and sharing of their biometric information without providing them just compensation. Each injury was caused by Starbucks' failure to provide the required notice under N.Y.C. Admin. Code § 22-1202(a) and the actions it took to violate N.Y.C. Admin. Code § 22-1202(b), which prohibits the sharing, selling, trading, and profiting from customers' biometric identifier information. These injuries can be redressed through the payment of damages to the Plaintiff and the members of the proposed Class.

## CLASS ACTION ALLEGATIONS

90.     The named Plaintiff brings this action as a proposed class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class: "all persons who on or after July 9, 2021 through the date of judgment in this action entered the gated area of a Starbucks–Amazon Go store in the City of New York that applied Just Walk Out technology."

**Rule 23(a) is satisfied.**

91.     The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, there are at least tens of thousands of people who are members of the proposed Class, because during the relevant time period they entered the gated area of one of the Starbucks–Amazon Go stores in the City of New York that that applied Just Walk Out technology.

92.     There are several questions of law and fact common to all Class Members, including:

      a.   Whether Starbucks collected, retained, converted, stored, and/or shared customers' biometric identifier information about consumers at its Starbucks–Amazon Go stores in the City of New York?

      b.   Whether Starbucks has failed to post clear and conspicuous signs near each of their customer entrances at its Starbucks–Amazon Go stores in the City of New York that comply with N.Y.C. Admin. Code § 22-1202(a)?

      c.   Whether Starbucks has shared, sold, or traded biometric identifier information to or with Amazon in exchange for anything of value or has otherwise profited from the transaction of biometric identifier information?

      d.   Whether Starbucks has violated N.Y.C. Admin. Code § 22-1202(a)?

e.  Whether Starbucks has violated N.Y.C. Admin. Code § 22-1202(b)?

f.  Whether Starbucks' violations of N.Y.C. Admin. Code § 22-1202(b) were
negligent, reckless and/or intentional?

g.  Whether Starbucks was unjustly enriched by its failure to notify customers
that it collected, retained, converted, stored, and/or shared consumers'
biometric identifier information?

h.  Whether declaratory and injunctive relief is warranted?

i.  Whether Starbucks owes damages of at least $500 to each member of the
Class for each violation of N.Y.C. Admin. Code § 22-1202(a)?

j.  Whether Starbucks owes damages of $500 for every negligent violation of
N.Y.C. Admin. Code § 22-1202(b), and $5,000 for every intentional or
reckless violation of N.Y.C. Admin. Code § 22-1202(b)?

k.  Whether attorneys' fees and costs should be awarded?

93.  The Plaintiff's claims are typical of the claims of the Class she seeks to represent,
because during the relevant period Plaintiff and the Class Members entered Starbucks–Amazon
Go stores in the City of New York, Starbucks failed to post clear and conspicuous signs near
each of the stores' entrances notifying customers in plain, simple, language that customers'
biometric identifier information was being collected, retained, converted, stored, or shared, and
Starbucks shared, sold, or traded customers' biometric identifier information with Amazon.
Accordingly, the Plaintiff's claims arise from the same pattern or practice or course of conduct
that forms the basis of the Class Members' claims. In addition, the Plaintiff brings the same
claims for violation of the Biometric Identifier Information Law and for unjust enrichment based
on the same legal theory as the other Class Members.

94.     Both the Plaintiff and her counsel will fairly and adequately represent the Class. There is no antagonism between the interests of the Plaintiff and those of the Class Members. There is no conflict between the Plaintiff's claims and the claims of the Class Members. The Plaintiff has retained counsel skilled in complex class actions who will vigorously prosecute this litigation.

**Rule 23(b)(3) certification is appropriate.**

95.     Class certification is appropriate for the proposed Class under Rule 23(b)(3). The common questions of fact and law, described above, predominate over any questions affecting only individual Class Members, including whether Starbucks violated and continues to violate N.Y.C. Admin. Code § 22-1202(a) and (b) and the relief the Plaintiff and the Class Members seek.

96.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. First, the Class Members do not have an interest in individually controlling the prosecution of separate actions, because their individual damages are unlikely to be large enough to warrant pursuing individual litigation in court or to obtain counsel to pursue an individual action, and because the cost of litigating the action will far exceed any potential benefit for individual Class Members.

97.     The prosecution of separate actions by individual Class Members would also impose heavy burdens on the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the proposed Class, including the key legal questions of whether Starbucks has violated N.Y.C. Admin. Code § 22-1202(a) and (b). A class action, on the other hand, would achieve substantial economies of time, effort, and expense,

and would assure the uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

98.    Second, the Plaintiff and her counsel are unaware of any other litigation by the Class Members against Starbucks regarding the practices challenged in this action. However, two prior cases have been filed in this District against Amazon for violating the Biometric Identifier Information Law in Amazon's Go stores in New York City.

99.    Third, it is desirable to concentrate the litigation of the claims in this forum, because each Starbucks–Amazon Go store in New York City is located in this District and venue is proper in this District.

100.    There will be no difficulty managing this action as a class action.

**FIRST CLAIM FOR RELIEF**
**Violation of the City of New York's Biometric Identifier Information Law**
**N.Y.C. Admin. Code § 22-1202(a)**
**On Behalf of Plaintiff and the Proposed Class**

101.    The Plaintiff, on behalf of herself and the Class Members, incorporates by reference all preceding paragraphs.

102.    Starbucks has engaged in a pattern or practice of violating N.Y.C. Admin. Code § 22-1202(a), and has violated the rights of Plaintiff Mallouk and the Class Members under N.Y.C. Admin. Code § 22-1202(a).

103.    N.Y.C. Admin. Code § 22-1202(a) provides that "[a]ny commercial establishment that collects, retains, converts, stores or shares biometric identifier information of customers must disclose such collection, retention, conversion, storage or sharing, as applicable, by placing a clear and conspicuous sign near all of the commercial establishment's customer entrances notifying customers in plain, simple language, in a form and manner prescribed by the

commissioner of consumer and worker protection by rule, that customers' biometric identifier information is being collected, retained, converted, stored or shared, as applicable."

104.    N.Y.C. Admin Code § 22-1201 provides that "[t]he term 'biometric identifier information' means a physiological or biological characteristic that is used by or on behalf of a commercial establishment, singly or in combination, to identify, or assist in identifying, an individual, including, but not limited to: (i) a retina or iris scan, (ii) a fingerprint or voiceprint, (iii) a scan of hand or face geometry, or any other identifying characteristic."

105.    The Starbucks–Amazon Go stores in the City of New York are "commercial establishment[s]" within the meaning of § 22-1201, because each store is a "retail store" and a "food and drink establishment." Each Starbucks–Amazon Go store is a "retail store" because it is an establishment that sells consumer commodities. And each store is a "food and drink establishment" because it sells food or beverages to the public for consumption off the premises. *See* N.Y.C. Admin. Code § 22-1201.

106.    As described above, Starbucks collects, retains, converts, stores, and shares biometric identifier information about each customer who enters the gated area of each Starbucks–Amazon Go store, including but not limited to information about the size and shape of each customer's body and palm images of consumers who use the Amazon One technology to enter the gated area.

107.    Information about the size and shape of each customer's body is biometric identifier information within the meaning of N.Y.C. Admin. Code § 22-1201, because that information constitutes a physiological or biological characteristic used by Starbucks, singly or in combination, to identify the customer, and that information is an "identifying characteristic" of each customer. As the New York City Council's Committee on Consumer Affairs and

Business Licensing stated in its December 10, 2020 Committee Report (at p. 3) on Local Law 3, "physiological characteristics concern the shape or composition of the body."

108.    The palm images that Starbucks–Amazon Go stores scan are also biometric identifier information within the meaning of N.Y.C. Admin. Code § 22-1201. A "scan of [the] hand" is one of the enumerated examples of "biometric identifier information" in N.Y.C. Admin. Code § 22-1201.

109.    Upon information and belief, from January 15, 2022, when the Biometric Identifier Information Law became effective, through March 13, 2023, Starbucks did not place any sign near the entrances of the Starbucks–Amazon Go stores to notify customers that customers' biometric information was being collected, retained, converted, stored, or shared.

110.    By failing to post any sign notifying consumers that their biometric information is being collected, retained, converted, stored, or shared by all of its Starbucks–Amazon Go stores in New York City from January 15, 2022 through March 13, 2023, Starbucks violated N.Y.C. Admin. Code § 22-1202(a).

111.    Although on March 14, 2023, Starbucks placed a sign at the 111 E. 59th Street store—and its other Starbucks–Amazon Go store in New York City—stating that the store collects biometric identifier information, that sign does not comply with N.Y.C. Admin. Code § 22-1202(a).

112.    As described above, the sign is not "clear and conspicuous," because it's designed to avoid attracting the attention of customers entering the store. The sign also does not disclose that Starbucks converts, retains, and shares biometric identifier information, as required by § N.Y.C. Admin. Code § 22-1202(a), when Starbucks *does* convert, retain, and share such information at its Starbucks–Amazon Go stores. And the sign expressly denies and disavows that

Starbucks is collecting customers' biometric identifier information except for customers who use the Amazon One palm scanner, even though Starbucks *does* collect, retain, convert, store, and share biometric identifier information from *all* customers who enter the gated areas of the Starbucks–Amazon Go stores, including the ones who do not use the Amazon One palm scanner. Rather than informing all customers who enter the gated area that their biometric identifier information *will* be collected—as well as retained, converted, stored, and shared—as required by § N.Y.C. Admin. Code § 22-1202(a), Starbucks' sign communicates to customers that their biometric identifier information *will not* be collected.

113.    Plaintiff Mallouk and the other Class Members have been aggrieved by Starbucks's violation of § 22-1202(a), because Starbucks failed to provide them with the proper notification that is required by § 22-1202(a) when they approached and then entered the Starbucks–Amazon Go stores in New York City.

114.    Under N.Y.C. Admin. Code § 22-1203, Starbucks is liable to the Plaintiff and each member of the Class for damages of at least $500 for each violation of § 22-1202(a). A violation has occurred each time that the Plaintiff or a member of the Class entered the gated area of a Starbucks–Amazon Go store in New York City on or after January 15, 2022 at a time when Starbucks did not place a sign near all of the entrances of the Starbucks–Amazon Go stores that complies with N.Y.C. Admin. Code § 22-1202(a).

115.    Starbucks' actions and violations were intentional, deliberate, reckless, and indifferent to the rights of Plaintiff and the Class Members under N.Y.C. Admin. Code § 22-1202(a).

116.    The Plaintiff seeks her attorneys' fees and costs related to this lawsuit and Starbuck's violations of N.Y.C. Admin. Code § 22-1202(a).

117.    Because Starbucks failed to provide Plaintiff Mallouk with an express written statement that the violation of § 22-1202(a) has been cured and that no further violations shall occur within 30 days of Plaintiff Mallouk providing written notice to Starbucks of its violation of N.Y.C. Admin. Code § 22-1202(a), and because Starbucks has continued to violate N.Y.C. Admin. Code § 22-1202(a) after Plaintiff Mallouk provided Starbucks with notice of the violation of N.Y.C. Admin. Code § 22-1202(a), Plaintiff Mallouk has a right to initiate an action against Starbucks. *See* N.Y.C. Admin. Code § 22-1203.

### SECOND CLAIM FOR RELIEF
### Violation of the City of New York's Biometric Identifier Information Law
### N.Y.C. Admin. Code § 22-1202(b)
### On Behalf of Plaintiff and the Proposed Class

118.    The Plaintiff, on behalf of herself and the Class Members, incorporates by reference all preceding paragraphs.

119.    Starbucks has engaged in a pattern or practice of violating N.Y.C. Admin. Code § 22-1202(b), and has violated the rights of Plaintiff Mallouk and the Class Members under N.Y.C. Admin. Code § 22-1202(b).

120.    N.Y.C. Admin. Code § 22-1202(b) provides that "It shall be unlawful to sell, lease, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information."

121.    Starbucks has sold, traded, and/or shared biometric identifier information of its customers who entered the gated areas of its Starbucks–Amazon Go stores in exchange for things of value, by (1) collecting palm images from some of its customers and information on the size and shape of all of the customers' bodies in the gated areas, (2) providing those palm images and information on the size and shape of customers' bodies to Amazon, and (3) receiving monetary and non-monetary benefits and consideration from Amazon in exchange for sharing the

biometric identifier information, including having Just Walk Out technology installed and operated in Starbucks' stored for a marginal or discounted price, receiving Amazon's Just Walk Out Analytics, obtaining the ability to use Just Walk Out Technology that allows Starbucks to reduce then number of employees in its stores and lower its labor costs, and increasing Starbucks' customer base, sales, and profit and reducing its costs.

122.    Starbucks has otherwise profited from transactions of its customers' biometric identifier information with Amazon, including by (a) having Just Walk Out technology installed and operated in Starbucks' stores for a marginal or discounted price in exchange for sharing customers' biometric identifier information; (b) receiving Just Walk Out Analytics and insights from Amazon in return, thereby allowing Starbucks to increase its revenues and profits; (c) allowing Starbucks to staff its Starbucks–Amazon Go stores with fewer Starbucks employees, thereby causing Starbucks to save additional monies in the form of reduced employee salaries and benefits; and (d) driving additional customers to Starbucks stores who are interested in Starbucks' new concept and an expanded marketplace and lounge area.

123.    Starbucks's actions and violations were negligent, intentional, and/or reckless to the rights of Plaintiff and the Class Members under N.Y.C. Admin. Code § 22-1202(b).

124.    The Plaintiff seeks her attorneys' fees and costs related to this lawsuit and Starbuck's violations of N.Y.C. Admin. Code § 22-1202(b).

125.    Under N.Y.C. Admin. Code § 22-1203, Starbucks is liable to the Plaintiff and each member of the Class for damages of at least $500 for each negligent violation of § 22-1202(b) and $5,000 for each intentional or reckless violation of § 22-1202(b). A violation has occurred each time that the Plaintiff or a member of the Class entered the gated area of a

Starbucks–Amazon Go store in New York City on or after July 9, 2021 at a time when Starbucks operated Walk Out Technology in the gated area.

### THIRD CLAIM FOR RELIEF
### Unjust Enrichment
### (Alleged in the Alternative to Claims One and Two)
### On Behalf of Plaintiff and the Proposed Class

126.    The Plaintiff, on behalf of herself and the Class Members, incorporates by reference all preceding paragraphs.

127.    In the alternative to alleged Claims One and Two, plaintiffs allege a claim for unjust enrichment. A plaintiff has a claim for unjust enrichment when the defendant was enriched at the plaintiff's expense, and it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.

128.    Because Starbucks failed to provide notice to customers that Starbucks collects, retains, converts, stores, and shares their biometric identifier information, including information on the size and shape of each customer's body, Plaintiff and other members of the Class entered the store and made purchases that they otherwise would not have made if Starbucks had properly provided that notice, or would not have agreed to pay the same price for the goods they purchased if Starbucks had properly provided that notice. Those purchases enriched Starbucks at the expense of the Plaintiff and the Class Members.

129.    And because Starbucks—without each customer's knowledge or consent—shared each customer's biometric identifier information with Amazon, Plaintiff and the other members of the Class entered the store and made purchases that they otherwise would not have made if Starbucks had properly provided that notice or obtained each customer's consent, or would not have agreed to pay the same price for the goods they purchased if Starbucks had properly provided that notice and consent. Those purchases enriched Starbucks at the expense of the

Plaintiff and the Class Members. It is against equity and good conscience to permit Starbucks to retain the money that it received from the Plaintiff and the Class Members under these circumstances.

130.    Starbucks is liable to the Plaintiff and the Class Members for the profit that Starbucks earned from the sales in the Starbucks–Amazon Go stores during the period of time that Starbucks did not notify customers that the stores collect, retain, convert, store, and otherwise profited from the sharing of their biometric identifier information.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff and the Class Members pray for relief as follows:

(i)     A declaratory judgment that Starbucks has violated the Biometric Identifier Information Law, N.Y.C. Admin. Code § 22-1202(a) and (b);

(ii)    A preliminary and permanent injunction against Starbucks requiring it to comply with N.Y.C. Admin. Code § 22-1202(a) and (b) at all Starbucks–Amazon Go stores in the City of New York;

(iii)   Certification of the case as a class action under Fed. R. Civ. P. 23(a) and (b)(3);

(iv)    Designation of the Plaintiff as the representative of the Class;

(v)     Designation of Plaintiff's counsel as Class Counsel;

(vi)    An order forbidding Starbucks from engaging in further violations of N.Y.C. Admin. Code § 22-1202(a) and (b);

(vii)   An award of actual, real, and/or statutory damages for Starbucks' violations;

(viii)  Reasonable attorneys' fees and costs incurred herein to the extent allowable by law;

(ix)    Pre- and post-judgment interest, as provided by law;

(x)     Payment of a reasonable service award to the Plaintiff in recognition of the services he has rendered and will continue to render to the Class Members; and

(xi)    Such other and further legal and equitable relief, including nominal damages, as this Court deems necessary, just, and proper.

## JURY DEMAND

131.        The Plaintiff demands a jury trial.


Dated: May 4, 2023                    Respectfully submitted,


                                      POLLOCK COHEN LLP

                                      By:   /s/ Christopher K. Leung
                                            Christopher K. Leung

                                      Christopher K. Leung
                                      111 Broadway, Suite 1804
                                      New York, NY 10006
                                      Tel.: (917) 985-3995
                                      Email: chris@pollockcohen.com

                                      PETER ROMER-FRIEDMAN LAW PLLC

                                      Peter Romer-Friedman
                                      1629 K Street NW, Suite 300
                                      Washington, DC 20006
                                      Tel.: (202) 355-6364
                                      Email: peter@prf-law.com

                                      SURVEILLANCE TECHNOLOGY
                                      OVERSIGHT PROJECT

                                      Albert Fox Cahn
                                      David Siffert
                                      40 Rector Street
                                      9th Floor
                                      New York, NY 10006
                                      Tel.: (212) 518-7573
                                      Email: albert@stopspying.org
                                              david@stopspying.org